NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL T.,<br><br>    Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil Action No. 24-9697 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court upon Plaintiff Michael T.'s ("Plaintiff")[1] appeal of the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying Plaintiff's application for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons below, the Court affirms the Commissioner's final decision.

**I. BACKGROUND**

  In this appeal, the Court must consider whether the Administrative Law Judge's (the "ALJ") finding that Plaintiff was not disabled is supported by substantial evidence. The Court begins with the procedural posture and the ALJ's decision.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

### A.  Procedural Posture

Plaintiff filed an application for a period of disability and DIB in July 2021,[2] alleging a disability onset date of January 1, 2021, and last insured date of December 31, 2026. (AR 29-30, 210, 243, 286, ECF No. 4.[3]) The Social Security Administration (the "Administration") denied the request both initially and on reconsideration. (*Id.* at 39, 100-04, 113-22.) Thereafter, Plaintiff requested a hearing (*id.* at 29, 123), and the ALJ held a hearing on July 20, 2023, with the claimant, his attorney, and an impartial vocational expert (*id.* at 29, 34, 36-37, 46-80). On November 17, 2023, the ALJ issued a written opinion denying Plaintiff's DIB application, finding that Plaintiff was not disabled under the Act. (*Id.* at 29-39.) The Administration's Appeals Council denied Plaintiff's request for review of the ALJ's decision on September 19, 2024. (*Id.* at 1-4.) This appeal followed. (ECF No. 1.) Plaintiff filed his moving brief, (Pl.'s Moving Br., ECF No. 5), the Commissioner opposed (Def.'s Opp'n Br., ECF No. 7), and Plaintiff replied (Pl.'s Reply Br., ECF No. 8).

### B.  The ALJ's Decision

In his written decision, the ALJ concluded that Plaintiff was not disabled at any time between January 1, 2021 and the date of the ALJ's decision. (AR 39.) The ALJ set forth the Administration's five-step sequential analysis for determining whether an individual is disabled. (*Id.* at 30-31 (citing 20 C.F.R. § 404.1520(a)).) As an initial matter, the ALJ found that Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2026."

---

[2] The parties' briefs and the ALJ's decision state that Plaintiff filed the application on July 28, 2021 (Pl.'s Moving Br. 4, ECF No. 5; Def.'s Opp'n Br. 2, ECF No. 7; AR 29), but the application included as an exhibit in the administrative record is dated August 6, 2021, as the date the application was "completed" (Ex. 1D, AR 210).

[3] The Administrative Record ("AR") is found at ECF No. 4. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

(*Id.* at 31.) At step one, the ALJ found that Plaintiff had not "engaged in substantial gainful activity" during the period from his alleged onset date through the date of the ALJ's decision. (*Id.* (citing 20 C.F.R. § 404.1571).)

At step two, the ALJ found that Plaintiff suffered from five severe impairments: (1) degenerative changes of the lumbar spine; (2) pain disorder; (3) diverticulitis; (4) major depressive disorder; and (5) unspecified anxiety disorder. (*Id.* at 32 (citing 20 C.F.R. § 404.1520(c)).)

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equate to one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526 during the relevant period. (*Id.* at 32-35.) The ALJ then found that Plaintiff possessed the residual functional capacity ("RFC"):

> to perform light work as defined in 20 C[.]F[.]R[.] [§] 404.1567(b) except he is limited to simple work; can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can have occasional interaction with supervisors, co-workers, and the public; can stand and/or walk for 6 hours during an 8-hour workday; can sit for 6 hours during an 8-hour workday; can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions; could occasionally climb (ramps/stairs), stoop, kneel, crouch, and crawl; and requires that a bathroom is available on the premises for his use.

(*Id.* at 34.)

At step four, the ALJ concluded that Plaintiff was "unable to perform any past relevant work" as a sheriff, which is defined as a "medium exertional level per [the Dictionary of Occupational Titles] but performed at heavy [exertional level] by the claimant." (*Id.* at 37 (citing 20 C.F.R. § 404.1565).) The ALJ considered that Plaintiff was 46 years old on the alleged disability onset date, which is defined as a "younger individual" (age 18-49), and that he has at least a high school education. (*Id.*) The ALJ determined that "[t]ransferability of job skills is not

3

material . . . because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [he] has transferable job skills." (*Id.* at 37-38 (citation omitted).) Based on the aforementioned factors and Plaintiff's RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.* at 38 (citing 20 C.F.R. §§ 404.1569, 404.1569(a).) In doing so, the ALJ relied upon the testimony of the vocational expert, who testified that an individual of Plaintiff's age, education, work experience, and RFC would have been "able to perform the requirements of representative occupations such as a Small Products Assember, . . . a Hand Packager, . . . and a Cleaner." (*Id.*)

At step five, the ALJ concluded that Plaintiff was not under a disability, as defined in the Act, from January 1, 2021 (the alleged onset date) through the date of the ALJ's decision for the purposes of Plaintiff's DIB. (*Id.* at 38-39.)

## II. LEGAL STANDARD

### A. Standard of Review

When considering an appeal from the final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearsing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v.*

*Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is "supported by substantial evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999)).

Even amid this deferential standard, the Third Circuit has explained that the court must undertake a qualitative review and a thorough examination of the ALJ's decision and the record:

> [The substantial evidence standard] is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion. The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (citation omitted). It is, thus, necessary for ALJs to analyze all probative evidence and set out the reasons for their decisions. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). If the ALJ has not analyzed all probative evidence and has not sufficiently explained the weight given to the evidence, the decision is not supported by substantial evidence. *See Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (internal citations omitted) ("[T]o say that [the] decision is supported by substantial evidence

5

approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were proper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted).

On appeal, Plaintiff bears the burden "of showing not merely that the Commissioner erred, but also that the error was harmful." *Romero v. Comm'r of Soc. Sec.*, No. 18-16806, 2020 WL 2301444, at *2 (D.N.J. May 8, 2020). "[W]hen appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in his favor, based on the existing record, he is quite unlikely to show that an error was harmful." *Id.*

**B.  Establishing Eligibility for DIB**

To be eligible for DIB under the Act, claimants must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). Under the statute, claimants are disabled only if their physical or mental impairments are "of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Administrative regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). For the first step, claimants must establish that they have not engaged in any substantial gainful activity since the onset of their alleged disabilities. *Id.* § 404.1520(a)(4)(i). For the second step, claimants must establish that they suffer from a "severe . . . impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). Claimants bear the burden of establishing the first two requirements, and failure to satisfy either one results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The third step requires that claimants provide evidence that their impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If claimants demonstrate that they suffer from a listed impairment or that their severe impairment is equal to a listed impairment, they are presumed to be disabled and entitled to DIB. *Id.* If they cannot so demonstrate, the eligibility analysis proceeds to step four.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv). In doing so, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. *Id.*; SSR 96-8p, 61 Fed. Reg. 34474, 34477 (July 2, 1996). Then, at step four, the ALJ determines whether claimants' RFCs permit them to resume previous employment. *Id.* § 404.1520(e). If claimants' RFCs permit previous employment, claimants are not "disabled" and thus not entitled to DIB. *Id.* § 404.1520(f). The burden of persuasion rests with claimants in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). At the fifth step, the burden shifts to the Commissioner to demonstrate that claimants can perform other work consistent with their medical impairments, age, education, past work experience, and RFC. 20 C.F.R. § 404.1520(g). If the Commissioner cannot satisfy this burden, claimants will receive DIB. *Id.*

## III. DISCUSSION

Plaintiff alleges that the ALJ's findings that: (1) Plaintiff did not meet or medically equal a listed impairment at step three; (2) Plaintiff has the RFC to perform light work; and (3) Plaintiff could engage in alternative work at step five—are not supported by substantial evidence. (*See generally* Pl.'s Moving Br.) The Court addresses each argument in turn.

### A.  Step Three

Plaintiff first argues that the ALJ's step three finding that Plaintiff's condition failed to meet the requirements of a listed impairment is "not supported by an adequate rationale and is not supported by substantial evidence." (*Id.* at 9.) Specifically, Plaintiff challenges the ALJ's findings as to Plaintiff's diverticulitis and mental impairments.[4] (*Id.* at 9-15.)

#### 1.  *Diverticulitis*

Regarding diverticulitis, Plaintiff asserts that "the [ALJ's] rationale" as to whether the relevant listing requirements are met or equaled is "simply absent." (*Id.* at 9.) He further contends that he "believe[s] that there is evidence that the specific requirements of [the listed impairment] may be met, or at the very least result in complications that impact [RFC] to a greater extent than found by the ALJ." (*Id.*)

At step three, ALJs must provide "some discussion" of their determination, but "need not 'use particular language or adhere to a particular format in conducting [their] analysis,' as long as 'there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). Here, reviewing the ALJ's decision as a whole, the

---

[4] The parties sort the impairments found by the ALJ into three categories: musculoskeletal problems, diverticulitis, and mental impairments. (*See generally* Pl.'s Moving Br.; Commissioner's Opp'n Br.) Of the three, Plaintiff concedes that "the conclusion of the ALJ is correct at least as to the Listings of Impairments" with respect to the musculoskeletal problems. (Pl.'s Moving Br. 9.)

Court finds no error at step three. Contrary to Plaintiff's assertion that the rationale is "simply absent" (*id.*), the ALJ explained that "[he] has considered [Plaintiff's] diverticulitis under [the Commissioner's regulations] [§]5.00, Digestive System," and that "there is no evidence that [Plaintiff] has experienced weight loss or other complications related to this impairment that would result in the claimant meeting or medically equaling the requirements of this listing" (AR 32). Later in the decision, the ALJ also indicated that Plaintiff's treatment notes provided only "some limited support" for Plaintiff's testimony that he experiences stomach pain and is in the bathroom for six to eight hours per day. (*Id.* at 34-35.) Specifically, the ALJ noted that "[w]hile the treatment notes document [Plaintiff's] diagnosis, there is little evidence of treatment for ongoing symptoms" outside of emergency treatment in June 2021 and follow-up appointments in July 2021 and March 2022. (*Id.* at 35.) Considering the ALJ's reasoning, the Court finds substantial evidence to support his findings. *See Knight v. Heckler*, No. 83-2727, 1985 WL 2889, at *4 (S.D.N.Y. Oct. 1, 1985) (finding, *inter alia*, the lack of "any major complications" and "no weight loss" to be substantial evidence supporting the finding that plaintiff was not disabled due to diverticulitis).

Even if the Court found the ALJ's step-three analysis to be deficient, Plaintiff must provide reasons as to why he "might have prevailed at step three if the ALJ's analysis had been more thorough." *Holloman*, 639 F. App'x at 814. Plaintiff does not "affirmatively point[] to specific evidence" which he believes leads to the conclusion that the listed impairments may be met. *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016). Instead, Plaintiff contends that there is evidence that the requirements of the listed impairments "may be met" or at least "result in complications that impact [RFC]." (Pl.'s Moving Br. 9.) But "one-off assertions about the purported improprieties of the ALJ's decision" are not sufficient. *Carolyn S. v. Comm'r of Soc. Sec.*, No. 21-10858, 2022 WL 4550628, at *4 (D.N.J. Sept. 28, 2022) (citing *Convoy v. Leone*, 316

F. App'x 140, 144 n.5 (3d Cir. 2009)). "The Court is not obligated to consider such undeveloped arguments." *Id.*

### 2. *Mental Impairments*

Plaintiff next argues that the ALJ "[did] not provide any rationale to support [the Paragraph B] decision." (Pl.'s Moving Br. 10.) Plaintiff further argues that the ALJ failed to consider certain evidence related to his limitations concerning two of the Paragraph B criteria: "interacting with others" and "manag[ing] his own affairs." (*Id.* at 12-14.) Plaintiff argues that, had the ALJ considered this evidence, he would have found a marked limitation for both Paragraph B criteria. (*Id.*)

As to "interacting with others," Plaintiff points to the hearing before the ALJ where he testified to confrontations with others, arguing that these incidents show "serious limitations in his ability to interact with other people." (*Id.* at 12-13.) But contrary to Plaintiff's assertion, the ALJ expressly noted that Plaintiff testified "that he had a confrontation with an employee at Walmart . . . [and] also has difficulty with both [of] his neighbors."[5] (AR 34.) After considering these statements, however, the ALJ found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 35-37 (considering treatment reports, which "generally reveal[] that [Plaintiff's] mood is euthymic with only some situational anxiety and occasional interpersonal difficulties," and that "coping mechanisms and medications have been

---

[5] While the ALJ addressed this evidence in the RFC analysis, that placement is immaterial, as the ALJ explicitly stated in the listings section that a more detailed assessment of the Paragraph B criteria would follow in the RFC discussion. (AR 33-34); *see Thomas v. Colvin*, No. 15-3288, 2016 WL 676372, at *3 (D.N.J. Feb. 18, 2016) (recognizing that, although the ALJ did not provide a detailed analysis in the listings section, his discussion of the plaintiff's impairments and the supporting medical evidence in the RFC section was sufficient).

helpful at reducing interpersonal difficulties").) It is well established that an ALJ "may discount a claimant's testimony if it is inconsistent with other evidence." *Manfre v. Comm'r of Soc. Sec.*, No. 14-7680, 2015 WL 5567428, at *5 (D.N.J. Sept. 22, 2015) (citing *Schaudeck*, 181 F.3d at 433); *see also Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) (finding that substantial evidence supported the ALJ's decision where the ALJ considered parts of the plaintiff's testimony but found them inconsistent with other parts of the medical record); *Hartranft*, 181 F.3d at 362 ("Allegations of . . . subjective symptoms must be supported by objective medical evidence."). As the ALJ explained the inconsistencies between Plaintiff's testimony and the medical evidence, the Court finds that the ALJ did not err in his determination concerning the Paragraph B criteria of "interacting with others."

As to "manag[ing] his own affairs," Plaintiff cites portions of Dr. William Dennis Coffey's psychological evaluation that he contends the ALJ did not consider, including notes that Plaintiff described himself as "a loner who didn't trust people" and that Plaintiff "didn't shower for weeks at a time." (Pl.'s Moving Br. 14.) Plaintiff argues that these notes show he "is dependent on others for managing his own affairs." (*Id.*)

Here, the ALJ addressed Dr. Coffey's report in detail, including findings that Plaintiff did not exhibit "oddities in posture or mannerisms," "hallucinations or delusions," "obsessions or compulsions," or "suicidal or homicidal thinking." (AR 32.) While the referenced portions may be less directly related to the kind of dependence Plaintiff describes, the Paragraph B criterion at issue is not "managing [one's] own affairs," as Plaintiff falsely characterizes it, but rather "adapt[ing] *or* manag[ing] oneself," as defined in the Commissioner's regulation. 20 C.F.R. § 404.1520a(c)(3) (emphasis added); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(4) (defining this ability as involving the capacity to "regulate emotions, control behavior, and maintain well-being in a

11

work setting"). The ALJ's analysis of medical evidence is therefore not limited to Plaintiff's alleged dependence on others, nor is the ALJ required to "address every single piece" of evidence related to it. *Kenneth S. v. O'Malley*, No. 23-22119, 2025 WL 866008, at *7 (D.N.J. Mar. 19, 2025); *Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 747 (3d Cir. 2009) (explaining that the ALJ "need not mention every piece of evidence in the record"). "ALJs are entitled to focus on the evidence they deem most probative; '[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record.'" *Kenneth S.*, 2025 WL 866008, at *7 (citation omitted). This Court, accordingly, rejects Plaintiff's argument concerning the Paragraph B criteria of "adapt[ing] *or* manag[ing] oneself."

To the extent that Plaintiff argues generally that the ALJ's opinion was not supported by substantial evidence, the Court rejects this argument as well. The ALJ considered, and referenced in his opinion, Dr. Coffey's psychological evaluation, Plaintiff's mental health treatment reports, and state agency consultants' shared opinions. (*See* AR 32-33.) Based on these considerations, the ALJ clearly stated that "[his Paragraph B decision is] supported by . . . [Plaintiff's] relatively high functioning activities of daily living, documented clinical findings on mental status examination, and the weight of the medical opinion evidence of record." (*Id.* at 33.) The ALJ also considered psychological consultant Dr. Helen Feldman's opinion, which found two mild and two moderate impairments across the four listing criteria for mental impairments. (*Id.* at 33.) This evaluation mirrors the ALJ's decision (*see id.* at 32-33), and it "is the most pertinent here[] because [it] expressly assessed [P]laintiff in regard to the [P]aragraph B criteria." *Cruz v. Comm'r of Soc. Sec.*, No. 15-954, 2016 WL 2624914, at *2 (D.N.J. May 9, 2016) (holding that a psychological consultant's opinion expressly assessing the four Paragraph B criteria "*alone is substantial evidence* which supports the ALJ's step three determinations" (emphasis added)).

Plaintiff's contention that the ALJ "[did] not provide any rationale" is therefore unsupported. (Pl.'s Moving Br. 10); *see also Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (finding the ALJ is not required to "use particular language or adhere to a particular format in conducting his [step three] analysis"); *Ramazan K. v. Dudek*, No. 24-6138, 2025 WL 1720409, at *11 (D.N.J. June 20, 2025) ("[C]ourts have routinely upheld an ALJ's reasoning [in step three] when it considers the relevant medical evidence in evaluating whether the claimant has met the specific medical requirements of the listings."). As such, the Court finds that the ALJ's step three findings are supported by substantial evidence.

### B.     RFC Determination

The ALJ found that Plaintiff possessed the RFC:

> to perform light work as defined in 20 C[.]F[.]R[.] [§] 404.1567(b) except he is limited to simple work; can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can have occasional interaction with supervisors, co-workers, and the public; can stand and/or walk for 6 hours during an 8-hour workday; can sit for 6 hours during an 8-hour workday; can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions; could occasionally climb (ramps/stairs), stoop, kneel, crouch, and crawl; and requires that a bathroom is available on the premises for his use.

(AR 34.) Plaintiff argues that the ALJ's RFC finding is "not supported by substantial evidence." (Pl.'s Moving Br. 15, 20.) Specifically, Plaintiff points to evidence regarding his musculoskeletal impairments, diverticulitis, and mental impairments. (*Id.* at 17-20.)

The ALJ is responsible for making the ultimate determination of an individual's RFC. 20 C.F.R. § 404.1546(c); *see Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or [s]tate agency consultants—must make the ultimate disability and RFC determinations."). "In making a[n] [RFC] determination, the ALJ must consider all evidence before him," and, "[a]lthough the ALJ may weigh the credibility of the

evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121. The indication of the ALJ's reasoning, however, may be "implicit" in the decision. *Diciano v. Comm'r of Soc. Sec.*, No. 18-17383, 2019 WL 6696523, at *5 (D.N.J. Dec. 9, 2019) (finding that, although the RFC did not specifically mention "the functions of sitting, standing, walking, lifting, carrying, or pushing . . . that does not mean the ALJ did not 'consider' those functions").

"Plaintiff bears the burden of proof at the point of RFC determination." *Diaz v. Astrue*, No. 07-3220, 2008 WL 4104564, at *6 (D.N.J. Sept. 3, 2008) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). A plaintiff, therefore, must "connect the dots between an omitted medically determinable impairment (or condition) and resulting limitations on h[is] functional capacity, consistent with h[is] burden." *Vanessa T-H. v. Comm'r of Soc. Sec.*, No. 23-2293, 2024 WL 1635685, at *6 (D.N.J. Apr. 16, 2024) (citing *Louis v. Comm'r of Soc. Sec.*, 808 F. App'x 114, 117 (3d Cir. 2020)). The Court addresses and rejects each of Plaintiff's arguments on the three categories of his impairments below.

### 1. *Musculoskeletal Impairments*

Plaintiff argues that the ALJ overlooked three pieces of evidence concerning Plaintiff's musculoskeletal impairments: (1) Plaintiff's "history of [spinal] problems" that are "shown on [Magnetic Resonance Imagings ("MRIs")] dating back to 2017"; (2) "extensive treatment from Garden State Management"; and (3) an "examination [report] by Dr. Merlin" (Pl.'s Moving Br. 17-18.)

As an initial matter, the ALJ expressly considered all three pieces of evidence that Plaintiff mentions. (AR 35-36; Pl.'s Moving Br. 17-18.) The ALJ referenced and provided a detailed description of MRI scans from March 2017 to April 2019 and January 2022. (AR 35.) He also

14

discussed Plaintiff's treatment records, including, but not limited to, those from Garden State Management. (*Id.* at 35-36.) The ALJ also provided a detailed account of Dr. Merlin's medical examination report and explained which aspects of the report influenced his decision. (*Id.* at 36.)

Plaintiff takes particular issue with the latter two pieces of evidence. As to Plaintiff's treatment history at Garden State Management, Plaintiff challenges the ALJ's finding that "[his] symptoms are generally controlled with medication and treatment" because "actual review of the evidence shows exactly the opposite." (Pl.'s Moving Br. 17.) Plaintiff further asserts that "[the ALJ's] comment that the 'frequency of [Plaintiff's] injections are not suggestive of severe symptoms' is pure speculation on his part, not supported by any evidence of record." (*Id.* (citation omitted).) This argument fails, however, because "mere disagreement with the weight the ALJ placed on the [medical] opinion is not enough for remand." *Moody v. Comm'r of Soc. Sec.*, No. 15-8319, 2016 WL 7424117, at *8 (D.N.J. Dec. 23, 2016). A district court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

As to the third piece of evidence, Dr. Merlin's examination, Plaintiff contends that the ALJ omitted portions of the report showing "complaints of burning pain in the feet, an inability to walk on his heels and toes, tenderness of the spine, and [ ] positive straight leg raising bilaterally." (Pl.'s Moving Br. 18.) Plaintiff argues that such evidence "actually showed significant abnormalities." (*Id.*) This argument also fails because Plaintiff "failed to offer evidence showing that the additional medical evidence is material to his disability case." *Fisher v. Massanari*, 28 F. App'x 158, 160 (3d Cir. 2002). "Without clarifying how the new evidence would likely have changed the outcome of the ALJ's decision, Plaintiff fails to explain how the evidence is material, and, as such, the Court must exclude Plaintiff's submission." *Tursky v. Colvin*, No. 14-3241, 2015 WL 4064707, at

*25 (D.N.J. July 2, 2015). Moreover, even assuming Plaintiff argued that the allegedly omitted parts would have changed the RFC decision, "the ALJ does not need to 'undertake an exhaustive discussion of all the evidence [in determining the RFC].'" *Jessica P. v. Comm'r of Soc. Sec.*, No. 20-12814, 2022 WL 1748118, at *4 (D.N.J. May 31, 2022) (quoting *Hernandez v. Comm'r of Soc. Sec.*, 89 F. App'x 771, 774 (3d Cir. 2004)). As such, the Court finds that the ALJ's RFC finding in terms of musculoskeletal impairments is supported by substantial evidence.

### 2. *Diverticulitis*

Plaintiff next challenges the ALJ's RFC determination that he can perform light work so long as "a bathroom is available on the premises for his use." (Pl.'s Moving Br. 19.) Plaintiff argues that this requirement is insufficient given his "persistent episodes of diarrhea" and that he "spends most of his time in the bathroom." (*Id.* at 18-19.) Plaintiff further argues that his "testimony as to [his] need [to use the bathroom] multiple times during the day and for extended periods" was "simply ignored by the [ALJ]." (*Id.* at 19.)

Contrary to Plaintiff's assertion, the ALJ explicitly referred to such evidence. (*See* AR 34-35 (noting Plaintiff's testimony that "due to his diverticulitis, he experiences stomach pain [and] is in the bathroom 6-8 hours during the day").) The ALJ then explained that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical [ ] and other evidence in the record for the reasons explained in this decision." (*Id.* at 35.) It is well established that "[a]n ALJ may discount a claimant's allegations about the intensity, persistence, or limiting effects of his symptoms where the evidence does not fully support those allegations, and 'need only include in the RFC those limitations which he finds to be credible.'" *Valerie S. v. Comm'r of Soc. Sec.*, No. 20-18216, 2022 WL 970283, at *9 (D.N.J. Mar. 31, 2022) (citing *Salles v. Comm'r of Soc. Sec*, 229 F. App'x 140, 147 (3d Cir.

2007)). Here, the ALJ considered and found credible treatment notes documenting Plaintiff's diverticulitis diagnosis during the relevant period, and the ALJ specifically cited records showing "little evidence of treatment for ongoing symptoms." (AR 35.) He also considered Plaintiff's emergency medical treatments and follow-up appointments, but concluded that "there is little other evidence or complaints of [Plaintiff's] alleged symptoms," again citing specific treatment notes. (*Id.*) In short, this Court finds that the ALJ considered Plaintiff's testimony in light of "all of the evidence in the record as a whole." *Whitsett v. Comm'r of Soc. Sec.*, No. 16-813, 2017 WL 1362023, at *5 (D.N.J. Apr. 10, 2017) ("[T]he Court finds that [the] ALJ [ ] considered all of the evidence in the record as a whole, and the RFC determination is based on substantial evidence."). The ALJ "g[ave] some indication of the evidence which he reject[ed] and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121. The Court, accordingly, finds that the ALJ's RFC decision as to diverticulitis is supported by substantial evidence.

### 3. *Mental Impairments*

Plaintiff challenges the ALJ's RFC determination that Plaintiff "can have occasional interaction with supervisors, co-workers, and the public." (Pl.'s Moving Br. 19 (quoting AR 34).) In support, Plaintiff briefly reiterates the same confrontational incidents emphasized in his argument under the listings analysis. (*Id.* ("As we demonstrated, [Plaintiff's] ability to interact is seriously limited and he has shown, by past contact, that he is very likely to have arguments and even fights with others with minimal or no provocation.").)

As the Court has already found, however, the ALJ did consider Plaintiff's testimony concerning these confrontations in his RFC analysis and explained that he found them to be inconsistent with the medical evidence. (AR 34-35.) Specifically, the ALJ considered medical records that generally revealed that Plaintiff had a "euthymic [mood] with only some situational

anxiety and occasional interpersonal difficulties," and that "coping mechanisms have been helpful at reducing interpersonal difficulties." (*Id.* at 36.) As long as the ALJ did consider all evidence, he has the sole responsibility and discretion for making the "ultimate determination" of the RFC. 20 C.F.R. § 404.1546(c); *see Chandler*, 667 F.3d at 361.

Plaintiff also argues that the ALJ's RFC finding limiting him to "occasional interaction with supervisors, co-workers, and the public" addresses only the frequency of interaction and not its quality, when "what actually matters is the quality of that interaction . . . [for] an individual [like Plaintiff who] is prone to excessive outbursts" (Pl.'s Moving Br. 19 (citation omitted).) This argument is unavailing. As already explained, the intensity of the alleged "excessive outbursts" during confrontational incidents in public places was explicitly considered by the ALJ but found to be inconsistent with the treatment notes. (*See* AR 35.) The ALJ made a step three Paragraph B finding that Plaintiff had a "moderate" limitation interacting with others (*id.* at 33), and courts have repeatedly held that an RFC restricting a claimant to *occasional* interaction with others sufficiently accounts for *moderate* difficulties in interacting with others. *See Gino G. v. Kijakazi*, No. 20-10537, 2022 WL 263440, at *8 (D.N.J. Jan. 28, 2022) (affirming an ALJ's RFC decision that explained "[the plaintiff's] difficulty with anger/social interaction is addressed by limiting the [plaintiff] to only *occasional* interaction with others" (emphasis added)); *James D.M. v. Comm'r of Soc. Sec.*, No. 22-6257, 2025 WL 1792864, at *2 (D.N.J. June 30, 2025) (noting that "limiting the [p]laintiff to 'occasional interaction' . . . accounts for his moderate limitations in interacting with others"); *VanLoan v. Kijakazi*, No. 21-1916, 2022 WL 9496227, at *12 (M.D. Pa. Oct. 14, 2022) ("[W]e have found an ALJ's limitation of a claimant to occasional interaction with others sufficient to account for a moderate limitation in this area of social functioning.").

Taken as a whole, since the ALJ considered all relevant medical records and testimony, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

### C.     Step Five

Plaintiff argues that the ALJ's decision at step five was not supported by substantial evidence because it was based on an inaccurate RFC and therefore the hypothetical questions to the vocational expert could not be supported by substantial evidence. (Pl.'s Moving Br. 21.) This argument fails because the Court has already found that the ALJ's RFC determination was supported by substantial evidence. Because the ALJ's RFC finding was valid, his Step Five conclusion—based on the vocational expert's testimony relying on that RFC—likewise stands. *See Centeno v. Comm'r of Soc. Sec.*, No. 17-12284, 2019 WL 413532, at *10 (D.N.J. Jan. 31, 2019) (finding that where "substantial evidence support[ed] the ALJ's RFC determination, the step five conclusion must stand").

## IV.     **CONCLUSION**

For the reasons set forth above, the Court affirms the Commissioner's final decision. The Court will issue an order consistent with this Memorandum Opinion.

Dated: September 25, 2025

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE